John MORAN, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 02–3053.

United States Court of Appeals,
Federal Circuit.

Nov. 21, 2002.

Stephen F. Shea, Elkind Shea & Wasitis, of Silver Spring, MD, argued for petitioner.

Kyle E. Chadwick, Trial Attorney, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Robert E. Kirschman, Jr., Assistant Director.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The issue is whether the Merit Systems Protection Board ("Board") properly upheld the Office of Personnel Management ("OPM")'s determination that an amended court order reducing a former spouse's survivor benefits provided in a divorce decree was a "modification" of that decree that 5 U.S.C. § 8341(h)(4) barred OPM from considering because it was issued after the federal employee's retirement. We affirm.

I

The appellant John Moran and Lynda Mills were married on December 28, 1982. They were divorced eleven years later on October 17, 1994, pursuant to an order of a West Virginia state court. In a separate

order relating to Moran's "Civil Service Retirement System Benefits" ("the 1994 order") the court provided:

5.   Under Section 8341(h)(1) of title 5, United States Code, the Plaintiff Lynda Ann Mills is awarded the maximum possible former spouse survivor annuity under the Civil Service Retirement System.

The order also awarded Mills a portion of "50% of gross civil service retirement benefits accrued during the period from 12/28/82 to 11/4/93."

Moran, an employee of the Federal Bureau of Investigation, retired in 1997 after more than 32 years of service.

A survivor annuity is payable to a former spouse only "to the extent expressly provided for" in a qualifying court order, as defined by OPM regulations. 5 U.S.C. § 8341(h)(1) (2000). *See also* 5 C.F.R. § 838.1004 (2001). In 1997, after Moran retired, OPM ruled that the 1994 order was a qualifying one and computed Mills' survivor annuity based on Moran's entire annual retirement annuity.

Moran and Mills then returned to the West Virginia court asserting that OPM had misinterpreted the 1994 order provision for a survivor annuity. In 1999 that court issued an order *nunc pro tunc* that changed the basis for determining Mills' survivor annuity ("the 1999 order"). The order stated: "the parties have now learned that the word maximum has been interpreted by ... [OPM] to mean the survivor's annuity on the entire pension including the portion awarded to ... [Moran]. [P]ursuant to West Virginia law, the maximum amount of an annuity that can be awarded is on the marital portion of the pension.... It is ordered that the Qualified Domestic Relations Order ... be amended."

The amended paragraph 5 stated:

5. ... Mills is awarded survivor's benefits of her marital portion of the the [sic] pension under the Civil Service Retirement System.

OPM refused to accept the 1999 order because 5 U.S.C. § 8341(h)(4) (discussed below) made it ineffective since it was a modification of the 1994 order that was made after Moran had retired. After OPM denied reconsideration, Moran appealed to the Board. In his initial decision, which became final when the Board refused to review it, the Board's administrative judge affirmed OPM's decision. He stated that OPM "interpreted the word 'maximum' to mean the survivor's annuity on the entire pension including the portion awarded to" Moran. He ruled that the 1999 order, by limiting Mills' survivor benefits to the portion based on the years she was married, was "a modification" that 5 U.S.C. § 8341(h)(4) prohibited because it reduced Mills' annuity.

II

Subchapter III of Title 5 of the United States Code governs civil service retirement, including annuities. Section 8341(h)(1) provides for an annuity for a former spouse of a deceased employee. Section 8341(h)(4) provides that, "[f]or purposes of this subchapter,"

a modification in a decree, order agreement, or election referred to in paragraph (1) of this subsection shall not be effective (A) if such modification is made after the retirement or death of the employee or Member concerned, and (B) to the extent that such modification involves an annuity under this subsection.

5 U.S.C. § 8341(h)(4).

The statute is clear. It "state[s] that such an order is ineffective if issued after

the retirement ... of the federal employee," *Hokanson v. Office of Pers. Mgmt.*, 122 F.3d 1043, 1047 (Fed.Cir.1997), and it contains no exceptions.

The 1999 order was issued two years after Moran retired. We must thus determine whether that order made a "modification" in the 1994 order and therefore was ineffective under 5 U.S.C. § 8341(h)(4).

"A modification is a change or alteration or limitation." *Newman v. Love*, 962 F.2d 1008, 1011 (Fed.Cir.1992) (citations omitted). The 1999 order on its face changed the original court order by reducing the amount of Mills' survivor annuity through changing the basis upon which it would be calculated. The original order awarded Mills "the maximum possible survivor annuity under the Civil Service Retirement System," which is fifty-five percent of an employee's annuity, 5 U.S.C. § 8341(b)(1). The 1999 order reduced her survivor's annuity by basing it upon the portion of Moran's annuity attributable to the period during which they were married, i.e., "50% of gross civil service retirement benefits accrued during the period from 12/28/82 to 11/4/93." Since civil service retirement benefits are calculated on the basis of the length of the employee's service, *see* 5 U.S.C. § 8339(a), the change made by the 1999 order substantially reduced Mills' survivor retirement annuity.

The language in the original court order, "the maximum possible former spouse survivor annuity under the Civil Service Retirement System," is identical to model language provided by OPM regulations, 5 C.F.R. part 838, subpart I, appendix A, paragraph 701. The model language is accompanied by an explanation that "using [this] paragraph will award the maximum possible survivor annuity." 5 C.F.R. pt. 838, subpt. I, app. A, ¶ 701. The regula-

tions provide different model language to provide only a pro rata share of an annuity. *Id.* ¶ 703. Indeed, in a different provision of the 1994 order, the court awarded Mills "50% of gross civil service retirement benefits accrued during" marriage. As this provision shows, the court knew what to say if benefits were to be based upon the period of the marriage.

The court indicated that the language in the 1994 order was taken from the OPM regulations and meant exactly what it said: Mills was to receive "the maximum possible former spouse survivor annuity under the Civil Service Retirement System." As the court stated: "[t]he Court has considered the requirements and standard terminology provided in part 838 of Title 5, Code of Federal Regulations [which contain the model instructions]. The terminology used in ... this Order ... concern[ing] benefits under the Civil Service Retirement System are governed by the standard conventions established in that part." This is precisely how OPM interpreted that order in 1997 and indicated it would calculate Mills' survivor annuity on the basis of those regulations.

Furthermore, OPM regulations provide: "[i]n executing court orders ... OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations." 5 C.F.R. § 838.101(a)(2). *See also Perry v. Office of Pers. Mgmt.*, 243 F.3d 1337, 1340–41 (Fed. Cir.2001). Here, as noted, the 1994 court order was unambiguous. It awarded Mills maximum survivor annuity under the Civil

Service Retirement System, not under West Virginia law. "OPM was not required to delve into the details and intricacies of ... [state] law to determine whether application of its formula in this case was inconsistent with that law." *Perry,* 243 F.3d at 1341.

Moran contends, however, that the 1999 order did not constitute a modification in the 1994 order, but instead was an "attempt to rectify ... [OPM's] mistaken interpretation" of the original order. According to Moran, OPM's interpretation renders the original court order invalid because West Virginia law requires that marital property be divided equally. He argues that both he and Mills always intended her survivor annuity benefits to be based on only the portion of his pension that accrued during the marriage.

The purpose for which the parties sought a change in the original court order, however, cannot alter the meaning of that order or avoid the statutory provision that a modification in a divorce order will not be effective if made after the employee retires or dies. Here, as we have shown, the 1994 order clearly and unequivocally awarded Mills the maximum possible former spouse's civil service retirement annuity. Moran's argument would require OPM to engage in the very kind of analysis and evaluation of state law that that agency's regulations state OPM should avoid. The Board properly affirmed OPM's refusal to consider the 1999 order because that order was an ineffective modification of the 1994 order.

## CONCLUSION

The decision of the Board is

*AFFIRMED.*