RASH, Appellee and Cross–Appellant,

v.

RASH, Appellant and Cross–Appellee.

[Cite as *Rash v. Rash,* 155 Ohio App.3d 106, 2003-Ohio-5688.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–03–024.

Decided Oct. 17, 2003.

Jay E. Feldstein, for appellee and cross-appellant.

Donna M. Engwert–Loyd, for appellant and cross-appellee.

Per Curiam.

{¶ 1} This case is before the court sua sponte. It has come to the court's attention that the divorce order from which this appeal is taken is not final and cannot be appealed at this time.

{¶ 2} Plaintiff-appellant, Susan L. Rash, filed a complaint for divorce against her husband, Richard S. Rash, in August 2000. Following a mediation and a trial, the domestic relations court entered a "Final Judgment Entry of Divorce" on August 27, 2003. This judgment awards the couple a divorce, orders Richard Rash to pay child support to Susan Rash, determines who will provide health insurance for the minor child and who will claim the child as a tax exemption, identifies and divides most of the marital property and debts, and orders Richard to pay spousal support and a portion of Susan's attorney fees. The judgment also addresses the parental rights and responsibilities of the parties, designating Susan as the primary residential parent and legal custodian of the parties' minor child and awarding Richard visitation and companionship. A portion of the visitation order is as follows:

{¶ 3} "Father will have Wednesday evenings with the minor child as an overnight from after school until Thursday evening at 7:00 p.m. and will continue to have two out of four weekends per month. In addition, when there is a fifth weekend, it will be alternated between the parties with the father having the first additional weekend that occurs in the calendar after the filing hereof. * * * As to Father's weekends per month, they will be subject to his work calendar and Father has agreed that he will provide Mother a four-week calendar when he receives the calendars and will set his weekends with the minor child immediately upon the receipt of that calendar.

{¶ 4} "* * *

{¶ 5} "This provision is subject to further mediation of the parties."

{¶ 6} In connection with the marital property division, the court addresses the parties' retirement accounts as follows:

{¶ 7} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the parties agree to split any of their retirement accounts, then all of such

retirement accounts, other than Defendant's Roth IRA, are to be QDRO'd equally, with the valuations to be set as of August 7, 2000, and the date of the filing of the Complaint for Divorce.

{¶ 8} "Any accretions or diminutions in value thereafter shall be borne by each party separately as their individual appear [sic] in said accounts. Each party shall participate in and sign all necessary documents and legal proceedings as shall be necessary to complete said QDRO's, all as provide [sic] by law.

{¶ 9} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court retains jurisdiction with respect to the Qualified Domestic Relations Order to the extent required to maintain its qualified status and the original intent of the parties. The Court also retains jurisdiction to enter further orders as are necessary to enforce the assignment of benefits to the non-participant as set forth herein, including the recharacterization thereof as a division of benefits under another plan, as applicable, or to make an award of spousal support, if applicable in the event that the participant fails to comply with the provisions of this order.

{¶ 10} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the participant shall not take actions, affirmative or otherwise, that can circumvent the terms and provisions of the Qualified Domestic Relations Order, or that may diminish or extinguish the rights and entitlements of the participant."

{¶ 11} Many of Ohio's appellate district courts have addressed a situation where a divorce order states that a Qualified Domestic Relations Order ("QDRO") shall be used to divide the pension plans of the parties but no QDRO is prepared or entered in the case at the time the appeal is filed. These courts have held that such an order is not final and appealable until the QDRO is prepared and entered in the divorce proceeding.[1] See *Procuniar v. Procuniar* (Sept. 8, 1995), Greene App. No. 95–CA–19, 1995 WL 526409; *Scott v. Scott* (Feb. 8, 2000), Allen App. No. 1–99–79, 2000 WL 140844; *Kofol v. Kofol* (June 17, 1999), Cuyahoga App. No. 74191, 1999 WL 401412; and *Bohl v. Bohl* (May 31, 2000), Lorain App. No. 98CA007276, 2000 WL 697455. This court has followed these cases on several occasions. See *Isaacson v. Isaacson*, 6th Dist. No. WD–01–030, 2002-Ohio-738, 2002 WL 252390; *Marx v. Marx*, 6th Dist. No. L–00–1297, 2002-

---

1. We have found only one case, *Wright v. Wright* (Nov. 10, 1994), Hocking App. No. 94CA02, 1994 WL 649271, where an appellate court held that a divorce order was final and appealable despite the fact that no QDRO had been prepared and entered even though one was provided for in the judgment entry. In that case, the court stated that property division is an ancillary issue in a divorce case and that a judgment that does not dispose of the property-settlement issue in a divorce is final and appealable. This case was decided before Civ.R. 75(F) was enacted in 1998. That rule clearly states that the property division in a divorce is essential to make the divorce final. Thus, we find that the reasoning in *Wright* is no longer pertinent, and we decline to follow it.

Ohio-852, 2002 WL 313373; and *Coutcher v. Coutcher,* 6th Dist. No. L–02–1054, 2003-Ohio-791, 2003 WL 397760.

{¶ 12} In the instant case, the situation is slightly different in that there is no outright order from the court that a QDRO be used to split the pension funds. Instead, the court ordered that the parties' retirement accounts are to be subject to QDROs "if the parties agree to split" any of them. No QDROs had been prepared or entered in this case at the time the notice of appeal was filed. A similar situation occurred in *Middendorf v. Middendorf* (June 8, 1994), Shelby App. No. 17–93–17, 1994 WL 247051. In *Middendorf,* the trial court "simply 'adopted' the referee's finding that Appellee could, at his own option, pay Appellant the sum of $ 35,756.60, or that a Qualified Domestic Relations Order ('QDRO') 'should' issue to satisfy the award." In *Middendorf,* the court of appeals stated that "[t]his lack of disposition leaves the [property-division] issue unresolved. In order for a QDRO to become effective, it must, of course, be issued by the court, having been made in compliance with federal law. Furthermore, unless the court orders either a lump-sum distribution of the profit sharing money or a QDRO," there is no final order.

{¶ 13} The August 27, 2003 judgment entry in this case does not make a final determination as to the property division, and it is, therefore, not final and appealable. We further find that even if the QDRO had been prepared and entered in this case, there still would be no final appealable order. The visitation and companionship of the father with his son is subject to further mediation. Thus, not all of the father's rights have been determined.

{¶ 14} An order that does not adjudicate all of the claims or all of the rights and liabilities of the parties can ordinarily be made a final appealable if the trial court judge finds that pursuant to Civ.R. 54(B) "there is no just reason for delay." However, in divorce proceedings, Civ.R. 75(F) states that a Civ.R. 54(B) certification will not make an interlocutory order final under certain circumstances. The rule states:

{¶ 15} "(F) Judgment. The provisions of Civ.R. 55 shall not apply in actions for divorce, annulment, legal separation, or civil protection orders. For purposes of Civ.R. 54(B), the court shall not enter final judgment as to a claim for divorce, dissolution of marriage, annulment, or legal separation unless one of the following applies:

{¶ 16} "(1) The judgment also divides the property of the parties, determines the appropriateness of an order of spousal support, and, where applicable, either allocates parental rights and responsibilities, including payment of child support, between the parties or orders shared parenting of minor children;

{¶ 17} "(2) Issues of property division, spousal support, and allocation of parental rights and responsibilities or shared parenting have been finally determined in orders, previously entered by the court, that are incorporated into the judgment;

{¶ 18} "(3) The court includes in the judgment the express determination required by Civ.R. 54(B) and a final determination that either of the following applies:

{¶ 19} "(a) The court lacks jurisdiction to determine such issues;

{¶ 20} "(b) In a legal separation action, the division of the property of the parties would be inappropriate at that time."

{¶ 21} Thus, the divorce order in this case could not be made final even with the addition of a Civ.R. 54(B) certification.

{¶ 22} This court has jurisdiction to hear appeals only from final orders. See Section 3(B)(2), Article IV of the Ohio Constitution.

{¶ 23} "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals * * *."

{¶ 24} Accordingly, the court orders that this appeal is dismissed at appellant's costs.

Appeal dismissed.

RICHARD W. KNEPPER, MARK L. PIETRYKOWSKI and ARLENE SINGER, JJ., concur.